Phillips *v.* The People.

New trial granted.

[FIRST DEPARTMENT, GENERAL TERM, June 6, 1870. *Ingraham, P. J.,* and *Cardozo* and *Geo. G. Barnard,* Justices.]

———•◦•———

CHARLES PHILLIPS, plaintiff in error, *vs.* THE PEOPLE, defendants in error.

It is not a valid objection to a writ of error to remove a case from a court of sessions, that it does not require a return of the *judgment* below, or a return of the proceedings on the indictment "*if judgment be thereupon given.*"

Nor is it a ground of objection to the hearing of the case, in the Supreme Court, upon the writ of error, that there is no return of any record of judgment.

It is sufficient if the writ, in terms, commands that the record and proceedings (which include the judgment, if any be given,) be certified to the Supreme Court, and the answer of the court of sessions sets forth the indictment, the trial, the exceptions, the findings of the jury, and the judgment of the court thereon.

A declaration or admission, if made before the accused is conscious of being charged with, or suspected of, crime, is admissible in evidence under all circumstances, however made or obtained; under oath, or without, upon a judicial proceeding or otherwise. But if made afterwards, the law at once becomes cautious and hesitating. The true inquiry then is, was it voluntary? For, unless it is *entirely* voluntary, it is held to be not admissible. *Per* POTTER, J.

By *voluntary* is meant, proceeding from the spontaneous suggestion of the party's own mind, free from the influence of any extraneous disturbing cause.

Where the accused, while under arrest for stealing a horse, was told by the complainant, and again, in substance, by the officer, that "*the best he* (the accused) *could do was to own it up ; that this would be better for him ;*" *Held* that a confession made under this inducement of advantage, if he confessed, was not a *voluntary* confession.

On the trial of an indictment for stealing a horse, it is not erroneous to admit evidence of the accused taking a wagon, on the same night, from another person. The taking of a wagon to use with the stolen horse, if they were used together, is a corroborating circumstance to the main charge, and can be used as evidence for that purpose; notwithstanding it is proof of another felony, also, not charged in the indictment.

WRIT of error to the court of sessions of Saratoga county, to bring before this court for review the trial and conviction of the plaintiff in error, upon an indictment for grand larceny.

The writ did not, in terms, require any return of the *judgment;* nor did it in the usual form require a return of all proceedings on the indictment "*if judgment be thereupon given.*" Nor did the county clerk's return to the writ contain the *record of the judgment of the court.*

On the trial various exceptions were taken by the prisoner's counsel to the admission and rejection of evidence; among others to the admission of evidence of the confessions of the prisoner. The prisoner's counsel also made several requests to the court to charge the jury, which were denied, and exception taken.

*J. W. Hill,* for the plaintiff in error.

I. The confessions proven were not voluntary, and were not, therefore, admissible. (*People* v. *McMahon,* 15 *N. Y. Rep.* 384. *Cowen & Hill's Notes, Phil. Ev.,* n. 206, *p.* 235. *People* v. *Ward,* 15 *Wend.* 231.) And they could not be made proper by being part of the conversation. (*People* v. *Wentz,* 37 *N. Y. Rep.* 310.)

II. The evidence of taking of wagon was a distinct offense not alleged in the indictment, nor so connected with the taking of the horse as to be a part of it, or neces-

Phillips *v.* The People.

sary to characterize it, and was therefore inadmissible. (*The People* v. *Wentz*, 37 *N. Y. Rep.* 307, 310. *Cowen & Hill's Notes, Phil. Ev., n.* 347, *p.* 462.)

III. The judge erred in charging that if it was the purpose of the prisoner to appropriate the horse to his own use, and to deprive the owner of the use of it, he was guilty of a larceny. That on this point it was proper for them to consider the manner in which the barn door was opened, the course taken by the prisoner to conceal his movements from the observation of the inmates of the complainant's house, the hour at which the transaction took place, his success in eluding detection, the distance that he removed the horse from the premises of the owner, the use he made of him, and his subsequent denial of all participation in the taking of the horse. That these acts and circumstances characterized the purpose of the prisoner in taking and carrying away the horse. That the taking and carrying away property, under the circumstances referred to, constituted a larceny, and not a mere trespass; that the circumstances of the taking in this case were such as constituted a larcency, if the acts were committed by a man that knew right from wrong. The intention was matter for the jury, and the circumstances of this case raised a fair question upon intent. The judge assumed to take the question of law and fact from the jury. (1 *Leach,* 418. 2 *East's P. C.* 685. 1 *Hale,* 504. *Barb. Crim. Law,* 175.) The same error was committed by the judge in refusing to charge, as requested, that if the jury believed that the prisoner took the horse solely for the purpose of driving it to Chatham street, then they might acquit. Clearly, if the party took the horse solely to ride to Chatham, and there abandoned it, and did not convert it further to his own use, it was only trespass. In 2 *East's P. C.* 557, the prisoner took a horse and rode it thirty-two miles, and left it at an inn, and pursued his journey; held only trespass. So, in 1 *Car. & P.* 658, where a man took

a horse more conveniently to get off goods stolen, but for this purpose only, and not with intent to finally convert it to his own use. So, also, in the familiar case of a slave taking a horse to aid his escape. (*Barb. Crim. Law*, 174. *People* v. *Wentz, supra.*) In the teeth of every principle of law was the refusal to charge as requested, that if the jury believed that the confessions, or any of them, proven to have been made by the prisoner after his arrest, were not entirely voluntary, proceeding from the spontaneous suggestions of his own mind, far from the influence of any disturbing cause, then such confessions, or any of them not so voluntarily made, were to be disregarded by the jury. The rejection of improper testimony is approved in *Durgin* v. *Ireland*, (4 *Kern.* 322.)

*W. B. French*, (district attorney,) for the people.

The judgment of the Supreme Court should be reversed, and that of the court of sessions affirmed.

I. The writ of error should be quashed or set aside. 1st. It is not in the usual or proper form. It should either require the return of the judgment below, or a return of the proceedings on the indictment "if judgment be thereupon given." (*See form of writ in Lowenberg* v. *The People*, 5 *Park.* 415. *Coats* v. *The People*, 4 *id.* 663. *Peverelly* v. *Same*, 3 *id.* 59.) 2d. But if not fatally defective in that respect, yet the writ should be quashed or set aside, or the conviction affirmed, for the reason that there is no return of any record of judgment in the case; and for aught that appears in the return, none has ever been made up. This is a fatal defect in the return, and no review of the trial can be had on this writ, and the return thereto. (2 *R. S.* 763, § 4; 765, § 20. *Thompson* v. *The People*, 3 *Park.* 208. *Dawson* v. *The same*, 5 *id.* 118. *Weed* v. *The People*, 31 *N. Y. Rep.* 465. *Chamberlin* v. *Morey*, 19 *Wend.* 350.)

II. But the judgment is right upon the merits, and

ought to be affirmed. 1st. The court did not err in denying the request of the prisoner's counsel to be permitted to ask the witness Welch if he did not say, in substance, to the prisoner that he "had better own up, for it would be better for him." The district-attorney did not at that time propose, nor did he in fact prove, or offer to prove by the witness, any confession of the prisoner. On the contrary, the only declarations of the prisoner, proved on the direct examination of Welch, were positive denials of any knowledge of the horse, or of his whereabouts, or of his having taken him. This proof certainly did not injure the prisoner, and had no tendency to convict him of the offense charged; and there was, therefore, no occasion for allowing the question to be put to the witness. 2d. Nor did the court err in overruling the objections to proof of the prisoner's confessions, subsequently testified to by Welch. (a.) The confessions were voluntarily made by the prisoner. The whole case negatives the idea that the prisoner was at all affected by anything said to him by Welch. But if he was affected by what Welch said to him, its only immediate effect was to make him deny the "soft impeachment" in toto. Under such circumstances, the law does not exclude the confessions of one accused of crime. (*People* v. *Smith*, 3 *How. Pr.* 227, *and cases cited. Done* v. *The People*, 5 *Park.* 364. *Duffy* v. *Same, Id.* 321, 323. *S. C.*, 26 *N. Y. Rep.* 588.) (b.) But it was proper to overrule the objections, and to admit proof of the prisoner's confessions to Welch, because the counsel for the prisoner had laid the proper foundation for its introduction by previously proving, on the cross-examination of Welch, that the prisoner had made a different statement from the one proved by the district-attorney. After such proof it was too late for the prisoner's counsel to object to evidence rendering specific and definite the general "statement" which they had proved was made by the prisoner, differing from the one already proved. It was manifestly

proper that the prosecution should then place before the jury the different statement so made, so that the jury might judge for themselves whether it differed or agreed with the former statement of the prisoner. If the prisoner's counsel did not want such different statement proved, he should not have proved that one was made. 3d. Nor did the court err in overruling a similar objection to evidence of the witness McNamara. For the district-attorney did not press the question, after eliciting the answer that he told the prisoner "it would be better for him to tell where the horse was, so Mr. Welch could get him." This did not do the prisoner any injury. 4th. Neither did the court err in overruling the objections to the evidence of McNamara to the prisoner's confessions, subsequently given, as they were but part of a conversation, a portion of which had already been proved by the prisoner's counsel. On cross-examination of this witness, the counsel for the prisoner had proved by him as follows : "I recollect hearing the prisoner say that he took the horse to ride down to where he worked." And the witness subsequently, on his re-examination, and again on his cross-examination, stated that it was at his stable in Schuylerville, and not in the conversation with Welch, that the prisoner said this. Now, all the confessions testified to by McNamara were made at this same conversation at the stable, a part of which the prisoner's counsel had previously proved, as already shown. It needs no authority to show that the prisoner's counsel have not an exclusive license to prove such portions of a conversation with their client as they may think favorable to the latter, and a right to object to and exclude the residue, which may possibly make against him. Unless they have such right the court committed no error in overruling the objections to the confessions proved by McNamara. 5th. But the proof by McNamara was that the substance of all that was said to the prisoner to induce him to confess, either by him or Welch, was that "if he

had taken the horse, it would be better for him to own up," &c. Now this was no improper inducement for him to tell the truth, and none at all to induce him to own himself guilty, when he was in fact innocent. In such case the confession is admissible in evidence against the prisoner. (*People* v. *Smith,* 3 *How. Pr.* 227, 230, *and cases cited. Done* v. *The People,* 5 *Park.* 364, 390. *Duffy* v. *Same, Id.* 321, 323. *S. C.,* 26 *N. Y. Rep.* 588.) 6th. So also were the confessions admissible in this case, because they did not stand alone, but were corroborated. It was solely in consequence of them that the horse was found. The prisoner gave a specific description of the route he took, by following which he told Welch he would find his horse. Welch followed the directions, and found his property. Under such circumstances the confessions of a prisoner are admissible against him. (*Done* v. *The People,* 5 *Park.* 364, 390. *The People* v. *McMahon,* 15 *N. Y. Rep.* 386. *Duffy* v. *The People,* 5 *Park.* 321. *S. C.,* 26 *N. Y. Rep.* 588.) 7th. It was also competent, after properly proving the confessions of the prisoner that he took the horse, to prove also that after the magistrate read over the complaint to him, the prisoner pleaded guilty to the charge. 8th. The court were right in sustaining the objections to and excluding the question put to Welch, "Is the prisoner above or below the ordinary intellect of mankind?" Unless the object was to prove the prisoner *non compos mentis,* which was not pretended, the evidence was inadmissible. (*Patterson* v. *The People,* 46 *Barb.* 626. *Gardiner* v. *Same,* 6 *Park.* 157.) But evidence of the same character was subsequently admitted, and its force entirely avoided by the proof by the prisoner, from his own witness, that he knew "right from wrong."

III. The judge did not err in his charge to, or refusal to charge the jury. 1st. In charging that the circumstances of the taking in this case are such as constitute larceny, if they were committed by a man that knew right

from wrong. (*Duffy* v. *The People*, 26 *N. Y. Rep.* 588, 595. *S. C.*, 5 *Park.* 321. *Patterson* v. *The People*, 46 *Barb.* 626.) 2. In charging that it was for the jury to determine whether the confessions were made under such circumstances as were calculated to induce the prisoner to make a false confession or statement; and also whether such confessions were corroborated or not. (*People* v. *Smith*, 3 *How. Pr.* 227, 230, *and cases cited. Done* v. *The People*, 5 *Park.* 364, 390. *Duffy* v. *The same, Id.* 331, 323. *S. C.*, 26 *N. Y. Rep.* 588.) 3d. In refusing to charge that the proof of taking a wagon by the prisoner, was no proof of the commission of a larceny in taking the horse mentioned in the indictment. It is well settled that the whole of a confession relating to two larcenies is admissible on the trial of one. (1 *Arch. Cr. Pr.* 409.) Besides, the taking the wagon the same night by the prisoner was part and parcel of one and the same scheme, to get up a team and vehicle, with which the prisoner was conveyed to North Chatham. And it tended to characterize the motive or intent with which the act was done; all which was entirely allowable (*Osborne* v. *The People*, 2 *Park.* 583. *People* v. *Wood*, 3 *id.* 681.) 3. The charge of the judge was right, and covered the entire case, and the multitudinous requests of the prisoner's counsel were either sufficiently covered by the charge as given, or were properly refused.

IV. The judgment should be affirmed, or the writ of error quashed.

*By the Court*, POTTER, J. An objection is taken by the counsel for the people to the hearing of this case, on the ground, first, that the writ of error is not in the proper form. That it should require the return of the *judgment* below, or a return of the proceedings on the indictment, if *judgment be thereupon given.* And, second, that there is no return of any record of judgment, in the case. He

claims, for this reason, that the writ should be quashed or set aside, and the conviction affirmed.

These objections are technical, and are without force. There is no prescribed form of a writ of error in such case by statute, and the books of forms have furnished no unvarying precedent. A form precisely like that used in this case was adopted to remove a case from the Supreme Court to the Court of Appeals, in *The People* v. *Thoms,* reported in 3 *Parker's Crim. Rep.* 256, and is cited as a proper form in *Waterman's notes to Archbold's Criminal Practice,* (*vol.* 1, *p.* 719,) to which no objection was taken. And also in a new work on criminal law and forms, by *Colby,* (*at p.* 409,) to remove a case from a court of sessions to the Supreme Court, the same form was adopted as in this. Besides, the writ, in terms, does command that the record and proceedings (which include the judgment, if any be given,) be certified to this court, and the answer of the court of sessions does set forth the indictment, the trial, the exceptions, and the findings of the jury and the judgment of the court thereon. All that is complained of is fully before the court for review.

The plaintiff in error raises the objection that his declarations, or confession of guilt, admitted in evidence, though objected to, were not legally admissible, inasmuch as they were not voluntary. This I regard as the important point in the case. The complainant, Dudley Welch, residing in the town of Saratoga, lost a horse from his stable on the night of the 26th September, 1868; the stable door was opened by force, and the horse taken without the consent of the owner. About three months afterwards he found the horse at North Chatham, Columbia county, about thirty miles from Troy. The plaintiff in error was arrested on suspicion of being the person who took the horse, and the complainant was his uncle. On being arrested, the complainant, in the presence of the officer who held him in custody, attempted to learn from the plaintiff in error

where the horse was, and to get admissions from the pris-
oner as to his taking the horse. The prisoner at first
denied all knowledge of the horse, and denied having
taken him. The complainant then detailed to him certain
circumstances which could be proved, tending to show his
guilt. The complainant then told him, (prisoner,) in
presence of the officer in whose custody he was, *" that the
best he* (prisoner) *could do, was to own it up; that this would
be better for him."* This statement was also repeated to
him by the officer who held him in charge. After these
statements, made by the complainant and officer, the pris-
oner began to give information of his manner of taking
the horse, and the place to which he took him; and then
directed the complainant what roads to take, and the place
where he would find the horse. The complainant followed
these directions, and found his horse. On the trial, while
the complainant was testifying to the conversation at the
time of the arrest, the prisoner's counsel asked the court
to be permitted to ask the witness if, at the time of and
prior to this conversation, the prisoner was not under arrest
charged with this crime, and if he did not say in substance
to prisoner, " that he had better own up, for it would be
better for him," which request was denied, and the pris-
oner's counsel duly excepted. The same objection was
made to the testimony of McNamara, the officer who
arrested the prisoner, while he was testifying; and a like
ruling by the court. This officer then testified that before
the prisoner made any confessions, and while he was under
arrest, he said to him in substance, that it would be better
for him to confess the matter, and told him the same after-
wards, before he was taken before the magistrate. The
prisoner's counsel then moved the court to strike out all
the testimony and confessions made by the prisoner, upon
the ground that they were not *voluntary,* and were im-
proper, which the court denied, and the prisoner's counsel
excepted. Although the officer afterwards somewhat

varied the language he used to the prisoner, yet he then states it as the substance of what he said; "*if he had* taken the horse it would be better for him to own up," and yet, he also adds, that he again told him, that he "thought *the complainant would not be so hard on him if he could get his horse back.*" This fully presents the point, as to whether this confession was voluntary. The rule seems to be well settled. Nothing remains but to make the application.

If the declaration or admission is made before the accused is conscious of being charged with, or suspected of crime, they are admissible under all circumstances, however made or obtained; under oath, or without, upon a judicial proceeding, or otherwise. But if made afterwards, the law at once becomes cautious and hesitating. The true inquiry then is, was it voluntary? For unless it is *entirely* voluntary, it is held to be not admissible. This is the rule as collected from all the authorities, and as laid down in the Court of Appeals, by Selden, J., in the case of *The People* v. *McMahon,* (15 *N. Y. Rep.* 384.) This opinion, so tersely and clearly expressed, is so exactly to the point, that I have extracted from it. He says: "In order to apply this rule, it is necessary to know what is meant by the term *voluntary.* The word is evidently not in all cases used in contradistinction to *compulsory,* because a confession obtained by either threats or promises from any one having authority over the accused, or concerned in the administration of justice, is uniformly held to be inadmissible. However slight the threat, or small the inducement thus held out, the statement will be excluded as not voluntary." It is plain, therefore, that in such cases, at least, by *voluntary,* is meant proceeding from the spontaneous suggestion of the party's own mind, free from the influence of any extraneous disturbing cause. This was repeated in *The People* v. *Wentz,* (37 *N. Y. Rep.* 304.) After citing various cases supporting these propositions,

the learned judge says: "No dictum to the contrary can be found."

Applying that principle to this case, it will be seen that the accused, a weak minded man, was, at the time of the declarations proved, under arrest, in the custody of an officer; the accuser his uncle; his custodian an officer concerned in the administration of justice; the accused naturally acting under an agitation of mind, was promised advantage if he confessed. It seems to me that this was a case clearly within the principle of the cases cited above, *not a voluntary confession.* Some inducement was held out, some extraneous influences did prevent the admission from being the spontaneous suggestions of his own mind, from such influences. If I am right in this, there was error committed on the trial. It is of no importance for us to see that there was *probably* other sufficient evidence in the case to have convicted the accused. I think there was. I have no doubt of his guilt, myself; but this was a question for the jury, not for us. He was entitled to a trial by the settled rules of law; a material error was committed against him; this entitles him to a reversal of the judgment.

There are two other complaints made of error. If they are such, they are not so clearly so as the one I have noticed. The admission of evidence of the accused taking a wagon on the same night from another person, is charged as error. I do not think, under the circumstances, that this was error. The taking a wagon to use with the stolen horse, if they were used together, was evidence of a corroborating circumstance to the main charge, and could be used as evidence for that purpose, notwithstanding it was proof of another felony also, not charged in the indictment; and yet, there may be a case of another distinct felony committed at another time, and under other circumstances, which it would be error to admit in proof.

The refusal of the learned judge to charge propositions, considered abstractly, would seem to be erroneous, but they must be regarded as based upon what had been proved in the case; and the refusal to charge as requested, was refused on the ground of having no basis in the evidence that authorized the requests made. One or two of the requests to charge, was, that the confessions of the prisoner, under the circumstances, were not voluntary. This, also, the judge refused; and if we are right in the first point we have reviewed, this was also error. I am therefore of opinion that the judgment of the court of sessions should be reversed.

Judgment reversed and prisoner discharged, absolutely. (*a*)

(*a*) On writ of error on behalf of the people, the Court of Appeals, at its April term, 1870, made the following order in this case: " So much of the judgment of the Supreme Court as reversed the judgment of the court of sessions affirmed; and that portion of the judgment granting an absolute discharge modified, by ordering a new trial in the sessions."